NEW YORK INDEMNITY COMPANY, APPELLANT, v. FARMERS TRUST CO. ET AL., RESPONDENTS.—51 S. W. (2d) 201.

Kansas City Court of Appeals. June 13, 1932.

*Culver, Phillip & Voorhees* for appellant.

*Shinabarger, Blagg & Livengood* for respondent.

TRIMBLE, P. J.—The petition in this action is in four counts and seeks to have established as preferred claims against the Farmers Trust Company (a corporation which closed its doors and went into the hands of the State Finance Commissioner on April 7, 1930), four separate claims based on as many checks drawn on said Trust Company in favor of and owned by the Union Credit Corporation, which the Trust Company accepted and paid out of moneys on deposit to the credit of the drawer of said check but in no instance was the money on said checks paid to the Union Credit Corporation owner of and entitled to the same.

The *first count* was based on a check dated December 22, 1929, for $230 drawn on said Trust Company by the Windsor Chevrolet

Company in favor of the Union Credit Corporation and delivered by the payor to one George Pickard for the payee, which the Trust Company accepted, marked ''paid'' and charged to the account of said Chevrolet Company (which had to its credit a sum in excess of said check), and, without authority by said Union Credit Corporation or of anyone authorized to act for it, did thereby accept and collect said check out of the deposit of the drawer and, by reason of the facts, wrongfully and unlawfully converted the same to its own use and thereafter paid $130 thereof to the owner Union Credit Corporation, but, without authority, paid $100 to said Pickard, who at the time was in the employ of said Union Credit Corporation but had no authority to endorse the name of the payee upon any checks payable to it; that said Pickard never paid said sum or any part thereof to said Union Credit Corporation. The count further stated that plaintiff was the surety upon a bond executed by Pickard to the Union Credit Corporation for the faithful performance of his duty and for the payment of all moneys coming into his hands belonging to said Union Credit Corporation and for the delivery of all checks payable to the order of the Union Credit Corporation coming into his hands; that by reason of Pickard's failure to deliver said check to said Union Credit Corporation, and his embezzlement of said sum of $100, plaintiff, as surety on said bond, had become subrogated to the rights of said Union Credit Corporation against said Farmers Trust Company and the said Union Credit Corporation had assigned its rights to recover against said Trust Company; and that the Finance Commissioner had received into his hands and now has in his hands, a sum largely in excess of said sum; that said Commissioner of Finance on the 31st day of October, 1930, allowed said claim as a common claim but refused to allow it as a preferred claim against the assets of the said Farmers Trust Company. Wherefore, plaintiff prayed judgment against defendant in the sum of $100 and that it be declared a preferred claim.

The *second count* was based on a similar check dated November 6, 1929, for $120.15, from the Windsor Chevrolet Company to the Union Credit Corporation, delivered to George Pickard for said corporation, which the said Pickard, likewise without any authority, endorsed and delivered to said Trust Company, which had on deposit a sum in excess of the amount of said check, and which the said Trust Company likewise unlawfully converted to its own use, stamped the check ''paid,'' charged the amount thereof to the Chevrolet Company, and without authority, said Trust Company accepted and collected said check out of money on deposit to the credit of the drawer; that said check was of the value of $120.15, and by reason of the facts, defendant unlawfully converted the same to its own use and

did have and receive for the benefit of the Union Credit Corporation the proceeds, to-wit, $120.15 and paid the same, without authority, to said Pickard who never paid the same to the Union Credit Corporation. Then follow the same allegations as in first count as to plaintiff being a surety on Pickard's bond to said Credit Corporation and assignee of and subrogated to its rights against the Farmers Trust Company and to collect from it the said sum of $120.15 now sought as a preferred claim.

The *third count* made the same allegations as the second count except that the third count is based on a check dated January 15, 1930, for $93.47 drawn by the Chevrolet Company to the Union Credit Corporation.

The *fourth count* contains the same allegations as in the other counts, save that the check in this count is dated January 15, 1930, and is for $459.

Contained in each of the four counts are allegations that the Farmers Trust Company went into the hands of the State Finance Commissioner April 7, 1930; that the last day for filing claims against the Trust Company before the commissioner was September 25, 1930, and before that date, to-wit, on July 11, 1930, plaintiff filed its said claims, duly verified with the commissioner who on October 31, 1930, allowed them as common claims but rejected them as preferred. The suit was filed December 6, 1930.

The answer of defendant was a general denial. The court, after hearing the evidence, rendered judgment on the first count for $100, on the second for $120.15, on the third for $93.17 and on the fourth count for $459, to be paid however as common claims, and held that plaintiff was not entitled to a preference on any of them.

Thereupon, plaintiff appealed.

The case is bottomed upon section 11, Laws 1929, page 208, approved June 6, 1929, and now appears as section 5575, Revised Statutes 1929, which, so far as claimed applicable to this case, provides that—

"2—When a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawee thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debtor therefor, the assets of such drawee or payor shall be impressed with a trust

in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank.''

It would seem that under the above act, when the Trust Company charged the amounts of the respective checks to the account of the Windsor Chevrolet Company, said Trust Company, in law, collected and had in its possession the proceeds of the checks which belonged to the payee Union Credit Corporation; and immediately it, and thereafter plaintiff as its assignee, occupied the relation of beneficiary and the Trust Company the relation of trustee for the one and later the other, which relation created a right to a preference which could not be defeated *except* by a showing that the account of the Union Credit Corporation in said Trust Company had been credited with the proceeds or that they had been paid in cash to some one with its consent. So long as matters continued as above with no such showing, the trust relationship existed. The mere fact that the Trust Company, after said trust relationship had been thus created, chose to turn a similar sum of money over, or give it away, to some one not entitled to it, would not change the relationship a particle. It could not change the relations by its own unauthorized wrongful act. Indeed, even in the absence of the statute, if the Trust Company collected the checks and the proceeds became mingled with its own funds, and then paid out money to a third person not authorized by the Credit Corporation to receive it, the Trust Company would be considered as having paid out money belonging to it and not money it had in trust for the Union Credit Corporation. [Horigan v. First National Bank, 273 S. W. 772, 776; National Bank v. Insurance Company, 104 U. S. 54, 68; Nichols v. Bank of Syracuse, 278 S. W. 793, 797.] The fact that the Trust Company closed its doors and went into the hands of the Finance Commissioner makes no change in the rights of the parties for it is elementary that said commissioner takes the assets of the insolvent Trust Company subject to every disability under which it existed in the hand of the Trust Company itself. [State ex rel. v. Page Bank, 14 S. W. (2d) 597, 599.]

The case was tried under an agreed statement of facts which support and agree upon the matters stated as facts in the above and foregoing portion of this opinion, and which also closely follows and coincides with the statements shown in the pleadings.

In addition to this the agreed statement of facts show that ''George Pickard as agent of the Union Credit Corporation had authority to

collect accounts from the customers of his principal in cash or by checks payable to said principal, and to pay the cash collected or deliver the checks or drafts so received by him to the Union Credit Corporation, or in the event the said Pickard had any doubt as to the collectibility of any check or draft he had authority to endorse any such check to a bank or trust company and to purchase with it a cashier's check or draft of such bank or trust company, payable to the Union Credit Corporation; that said Pickard *had no other authority whatever, to endore the name of said Union Credit Corporation to any check or draft payable to it, and had no authority to receive cash on any such check or draft."*

It was further agreed that the Union Credit Corporation had no knowledge that the said Pickard "had ever endorsed its name to any check or draft payable to it and received the cash thereon and when the Union Credit Corporation discovered the embezzlement of the said Pickard, the latter disappeared."

The agreed statement of facts further shows, with regard to each of the four counts, that Pickard "without any authority, wrongfully and unlawfully endorsed said check and delivered same to the Farmers Trust Company" and that at the time the payor of the check, Windsor Chevrolet Company, had to its credit in said trust company a sum in excess of the amounts of said checks; that said Farmers Trust Company "wrongfully and unlawfully converted said check to its own use, . . . and charged the amount of said check to the account of said Windsor Chevrolet Company and surrendered said check to it, notwithstanding said check had not been endorsed by said Union Credit Corporation or by any one authorized to act for it;" that said Farmers Trust Company *"did accept and collect said check out of the monies on deposit to the credit of the drawer."*

From that moment the Trust Company had in its possession money which did not belong to it, but which did belong to the Union Credit Corporation. But it did not pay the money to said owner; and the latter never requested the Trust Company to pay the proceeds of the checks to it by crediting its accounts in that or any other bank with such proceeds or consented to any payment to any one other than itself. Suppose now, if the trust company had never paid the amount of the checks to Pickard, the Union Credit Corporation would be preferred creditor and plaintiff, as its assignee would succeed to all of the rights of its assignor.

But it is argued in behalf of defendant that since the trust company has paid out the money to Pickard and does not have it *now* and consequently the trust company's assets are not now enhanced, there is no preference. But the payment to Pickard was an *unauthorized* payment, and in law, so far as plaintiff or its assignor the Union Credit Corporation are concerned, this is *no payment at all.* Indeed when the trust company paid money to Pickard, the law con-

siders it paid out its own money and not that it violated its duty to the beneficiary of the trust fund in its vaults.

Under the circumstances of this case, we think the Statute applies, and, if it does, it must be accorded absolute obedience.

The cases cited and relied on by defendant are not deemed to be in point, they not dealing with a situation wherein the statute herein considered was invoked or relied upon, but having to do with other principles. The judgment is reversed and the cause is remanded with directions to render judgment awarding a preference to plaintiff's claim. *Bland, J.,* concurs; *Arnold, J.,* absent.